**Ana Lucia ARBELAEZ, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 03–20685CIV.**

United States District Court,
S.D. Florida.

Nov. 8, 2004.

David Oscar Markus, Hirsch and Markus, Miami, FL, for Plaintiffs.

AUSA, Anne Ruth Schultz, U.S. Attorney's Office, Miami, FL, for Defendants.

### ORDER DENYING PLAINTIFF'S MOTION PURSUANT TO § 2255

HIGHSMITH, District Judge.

THIS CAUSE is before the Court upon Plaintiff Ana Lucia Arbelaez's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (the "Motion"), following an evidentiary hearing thereon, which occurred on October 28, 2003. As support for her Motion, Ms. Arbelaez ("Arbelaez"), raises claims of ineffective assistance of counsel. THE COURT, having considered the Motion, the pertinent portions of the records, witness testimony, and argument of counsel, and being otherwise fully advised in the premises, hereby DENIES the Motion for the reasons set forth below.

### I. Background [1]

On November 9, 2000, Arbelaez was arrested and charged with conspiring to

---

1. Unless otherwise noted, the facts herein have been derived from the Presentence Investigation Report ("PSI") filed by the Probation Officer in the underlying criminal action, Case No. 00–933–CR–HIGHSMITH.

launder narcotics proceeds in a one-count Superseding Indictment. Among the 17 individuals and entities charged in the indictment were her son (Arturo Pratt), her business (United Express), a friend and employee (Carminia Garzon), and her paramour (Raul Espinosa). On June 13, 2001, Arbelaez was debriefed by law enforcement officers concerning her criminal activity with co-defendants Espinosa and Garzon. Arbelaez provided law enforcement with significant inculpatory information concerning both individuals.

On June 19, 2001, Arbelaez entered into a plea agreement with the Government where they agreed to recommend to the Court that: (1) the applicable guideline section as to Count I would be U.S.S.G. § 2S1.1(a)(2), yielding a base offense level of 23; (2) pursuant to U.S.S.G. § 2S1.1(b)(1) a three level increase would be authorized because of Arbelaez's awareness that the proceeds were derived from the distribution of narcotics; (3) pursuant to U.S.S.G. § 2S1.1(b)(2) the value of the funds attributable to Arbelaez was more than $1 million but did not exceed $2 million, increasing the base offense level by five levels; (4) Arbelaez should receive a three-level increase as a manager and leader in a criminal activity involving five or more participants, pursuant to U.S.S.G. § 3B1.1; and (5) Arbelaez should receive a three-level adjustment at sentencing for timely acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

The three-level adjustment, however, was subject to recommendation by the Government, and it was not required to make such recommendation if Arbelaez: (1) failed or refused to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) was found to have misrepresented facts to the Government prior to entering into the plea agreement other than at the time of her arrest;

or (3) committed any misconduct after entering into the plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official. (Government's Preliminary Response, Exhibit A at ¶ 8; DE 3). As part of that provision, the Government also agreed not to oppose a defense request for a sentence at the low end of the Sentencing Guidelines.

In exchange for the undertakings made by the Government in the plea agreement, Arbelaez agreed to waive her right to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed under 18 U.S.C. § 3742, unless the sentence exceeded the statutory maximum or was the result of an upward departure. Arbelaez further waived the right to appeal an incorrect application of the sentencing guidelines.

On June 19, 2001, this Court conducted a combined plea colloquy in the underlying criminal action. (Government's Supplemental Response, Exhibit A; DE 9). The Court proceeded to enumerate Arbelaez's rights, and inquired whether the Superseding Indictment was translated to her native language and explained to her by her attorney. *Id.* The Court ultimately determined that her plea was freely and voluntarily given and that she had been fully aware and advised of her rights and the charges against her. *Id.* Arbelaez acknowledged that she was satisfied with the counsel and help she had received from her attorney and that her guilty plea was knowingly and voluntarily given. *Id.* Specifically, Arbelaez acknowledged that the Court would ultimately determine the appropriate sentence in the case and that whatever her attorney told her about a possible sentence was only advice and not

a promise. *Id.* at 30. After summarizing the terms of the plea agreement, the Court accepted Arbelaez's guilty plea.

On July 23, 2001, Arbelaez provided the United States a detailed statement of her acceptance of responsibility. (PSI at 21–23). Arbelaez's counsel stated that he helped her prepare the statement because of his fluency in the Spanish language.[2] The prepared statement expressed her desire to resolve the case by way of plea agreement rather than make the Government prove its case at lengthy trial. *Id.*

Prior to her acceptance of responsibility, on July 12, 2001, Arbelaez had been served with a subpoena to appear as a witness at the trial of Co-defendants Orlando Puche, Enrique Alfonso Puche, Mauricio Javier Puche, and Wilder Moreno. (Affidavit of Feigenbaum at ¶ 7). After meeting with her attorney, Mr. Feigenbaum, for little over an hour that same day, Arbelaez elected to invoke her Fifth Amendment right not to testify. (*Id.* at ¶ 8).

Thereafter, on September 4, 2001, Arbelaez was called as a witness at the trial of Co-defendants Raul Espinosa and Carminia Garzon. (Government's Preliminary Response, Exhibit C at 4–10). Prior to the commencement of her testimony, this Court, as the presiding Court, inquired as to whether Arbelaez's attorney, who was in Key West in trial before the Honorable James Lawrence King, was aware of Arbelaez's intent to testify. *Id.* To make certain that her rights were adequately represented, the Court located Mr. Feigenbaum in Key West and discussed "off-the-record" whether Mr. Feigenbaum was aware of Arbelaez's intent to testify and whether

he had discussed the issue with her. *Id.* After Mr. Feigenbaum explained, to the satisfaction of the Court, that he had discussed at length with Arbelaez the issue of testifying, and her rights in that regard, and that in the final analysis it was Arbelaez's decision to testify, the Court then addressed Arbelaez directly. *Id.* Arbelaez confirmed the accuracy of the Court's understanding, agreeing that she had, indeed, been advised by Mr. Feigenbaum and that the final analysis of their discussions was that the ultimate decision whether to testify was to be hers. *Id.*

Arbelaez opted to testify on behalf of Ms. Garzon, and the Government concluded that Arbelaez's exculpatory testimony at trial "significantly and materially" departed from the information she provided law enforcement officers during her debriefing. As such, Arbelaez was deemed to have either committed perjury while testifying or provided false statements to law enforcement officers during her debriefing, in violation of 18 U.S.C. § 1001. It was on this basis that the Government withdrew its recommendation under the plea agreement for a three level reduction for acceptance of responsibility and requested a two level increase for obstructing or impeding the administration of justice.

Counsel for Arbelaez, Mr. Feigenbaum, duly objected to the obstruction of justice enhancement and to the withdrawal of the three level reduction for acceptance of responsibility. During the sentencing hearing, the Court sustained both objections, yielding a total offense level of 31. (*See* Government's Supplemental Response, Exhibit B at 8–9). Ultimately, Arbelaez was

---

**2.** Arbelaez's attorney for the plea and sentencing portion of the criminal case, Martin Feigenbaum, indicated in his Affidavit that he formally studied Spanish at the American Graduate School for International Management, and from 1973 through 1984 he conducted most of his business in Spanish and traveled frequently to Latin America. (Affidavit of Martin A. Feigenbaum, Esq. at fn.3). Mr. Feigenbaum attested to the fact that he is able to communicate with his Spanish-speaking clients without the aid of an interpreter. *Id.*

sentenced to 108 months of imprisonment, followed by three months of supervised release. *Id.* at 17. No appeal was filed as stipulated to in the plea agreement. In March 2003, this Motion followed, and a hearing was granted.

## II. *Analysis*

Arbelaez bases her claim of ineffective assistance of counsel on two alleged acts or omissions: (1) that counsel persuaded, induced, and convinced her to enter into a plea agreement causing her to believe that her sentence would be reduced by 1/3 if she cooperated with the government; (2) that her counsel failed to be present when she was called to testify as a witness on be-half of her co-defendants.

Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Arbelaez must satisfy two prongs ("performance" and "prejudice") to prevail on an ineffective assistance of counsel claim: (1) under the performance prong, she must show that "counsel's representation fell below an objective standard of reasonableness;" and (2) under the prejudice prong, she must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. *See also Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir.1990). A Court need not approach the inquiry in any particular order, or even address both prongs of the inquiry if the movant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id.*

In this case, Arbelaez claims ineffective assistance of counsel prevented her from entering a knowing and voluntary plea.

To set aside her guilty plea based on ineffective assistance of counsel, Arbelaez must show that (1) her counsel's assistance was not "within the range of competence demanded of attorneys in criminal cases" and (2) a reasonable probability exists that she would not have pleaded guilty had her counsel given competent advice. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) *citing McMann v. Richardson*, 397 U.S., 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■ Arbelaez claims that her counsel misled her to believe that her sentence would be reduced by one-third if she cooperated with the Government and entered into the plea agreement, and that he failed to properly represent her with respect to that plea agreement so as to preclude her from receiving any benefit therefrom. The standard by which a court determines whether a defendant was prejudiced by her attorney's misstatements is whether the defendant was "erroneously induced to believe that she would benefit from pleading guilty." *U.S. v. Fuller*, 769 F.2d 1095, 1098 (5th Cir.1985). If the defendant believes that her guilty plea reduces her chances for a longer sentence but in fact receives the maximum sentence allowable, then prejudice occurs. *Id.* at 1096–98.

■ However, in this case, Arbelaez's sentence was lowered to the end of her guideline range. The PSI Report fixed Arbelaez's total offense level at 37 with a Guideline imprisonment range of 210–240 months. The Court sentenced Arbelaez to 108 months imprisonment, at the low end of the Guidelines for a total offense level at 31. Had Arbelaez gone to trial and lost, she would not have received a three-level reduction for acceptance of responsibility and would have received a four-level increase for aggravated role, a net increase in the total offense level of four levels. The Guideline imprisonment range for total offense level of 35 would have been

168–210. The low end of that range was 60 months more imprisonment than Arbelaez received under the plea agreement even without the downward departure for substantial assistance. Upon review of the record evidence, it is apparent that Arbelaez did, in fact, benefit from pleading guilty. Therefore, Arbelaez has suffered no prejudice with respect to any alleged misstatements made by her counsel, and, thus, Arbelaez has failed to show that her counsel's assistance was below the range of competence demanded of attorneys in criminal cases.

Arbelaez claims that she was induced to plead guilty because her counsel failed to give her competent advice as to the consequences of her plea. Arbelaez must overcome a strong presumption that her plea was voluntary. *See Long v. United States,* 883 F.2d 966, 969 (11th Cir.1989) (plea not involuntary despite attorney's overstatement of prison term because no evidence would have changed plea if prediction of sentence proper).

■ Federal Rule of Criminal Procedure 11(c)(1) imposes upon a District Court, the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. This safeguard is to ascertain that: (1) the guilty plea is free from coercion, (2) the defendant understands the nature of the charges, and (3) the defendant knows and understands the consequences of her guilty plea. *See United States v. Siegel,* 102 F.3d 477, 480–81 (11th Cir.1996). A "court's failure to address any one of these three core concerns requires automatic reversal." *United States v. Bell,* 776 F.2d 965, 968 (11th Cir.1985). In this case, the transcript of the change of plea hearing clearly establishes complete compliance with Rule 11, including Arbelaez's knowing and voluntary acceptance of her guilty plea. In particular, the Court's colloquy specifically addressed the issue that the Court would determine the appropriate sentence in the case notwithstanding her attorney's advice or recommendation.

## A. *Performance*

To show that counsel's performance was deficient, Arbelaez must make a showing that counsel made such egregious errors that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687, 104 S.Ct. 2052. In *Strickland,* a Supreme Court case that originated in the Southern District of Florida, the Court explained that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. Rather than specifying particular requirements of effective assistance, the Supreme Court decided that the Sixth Amendment "relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*

Although the *Strickland* Court identified certain basic duties owed in the representation of a criminal defendant, such as a duty of loyalty and a duty to avoid conflicts of interest,[3] the Court emphasized that the basic duties neither exhaustively define the

---

**3.** "Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. (citation omitted). From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

obligations of counsel nor form a checklist for judicial evaluation of attorney performance. *Id.* The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.* The *Strickland* Court further cautioned that "[j]udicial scrutiny of counsel's performance must be *highly deferential.*" *Id.* at 689, 104 S.Ct. 2052.

■ In the case at hand, Arbelaez alleges that her counsel *ineffectively* persuaded, induced, and convinced her to enter into a plea agreement whereby she received no benefit and gave up just about every right and argument she had. Such conclusory allegations fail to establish a showing of unreasonable conduct on the part of Arbelaez's counsel. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of professional judgment. The Court must then determine whether the identified acts or omissions were outside the wide rang e of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. Arbelaez claims that she was misinformed as to the consequences of her plea, and that she was under the mistaken "impression" from her lawyer that she was going to get a third off of her sentence for her cooperation. Arbelaez's only support for such allegations came in the form of the testimony of Arbelaez's niece, Connie Castro, at the hearing. Ms. Castro, however, supplied no evidence corroborating any of Arbelaez's allegations. The essence of Ms. Castro's testimony and affidavit centered on her distant and limited observation of a singular meeting to which Ms. Castro was party for the benefit of her mother, a co-defendant, and *not* for Arbelaez—a plea bargaining meeting with prosecutors. Neither in her affidavit nor during her testimony before this Court, did Ms. Castro attest to the substance of any attorney-client meetings. Furthermore,

Ms. Castro admitted during her testimony that she was never privy to any attorney-client communications. Without knowing anything of Arbelaez's prior and subsequent conversations with her attorney, Mr. Feigenbaum, Ms. Castro makes unsupported assertions about the quality or "ineffectiveness" of Mr. Feigenbaum's representation of Arbelaez. Such allegations fall woefully short of a violation of the touchstones of the Sixth Amendment.

Not only was Ms. Castro's testimony lacking in substance, but Arbelaez's testimony was also lacking as it was replete with inconsistencies and evasive responses. So much so, in fact, that this Court could not discern any evidence upon which it could rely to justify a claim for ineffective assistance of counsel. In sum, the Court found Arbelaez's testimony wholly incredible and unreliable, particularly when viewed in conjunction with the record evidence and the testimony of Mr. Feigenbaum.

### B. *Prejudice*

Under the prejudice prong, Arbelaez must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Assuming, *arguendo,* that Arbelaez had presented sufficient showing of unprofessional behavior by Mr. Feigenbaum, the fact that she suffered no prejudice, proves fatal to her argument. Therefore, in light of the foregoing, it is

ORDERED AND ADJUDGED that Plaintiff's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED.